UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| HEATHER LEANN HORST, | Case No. 17-CV-3650 (PJS/SER) |
| Petitioner, | |
| v. | ORDER |
| TOM ROY, | |
| Respondent. | |

Deborah K. Ellis, for plaintiff.

Peter R. Marker, RAMSEY COUNTY ATTORNEY'S OFFICE, for defendant.

Petitioner Heather Leann Horst was convicted of first-degree premeditated murder after a jury found that she had aided and abetted the killing of her husband. The Minnesota Supreme Court unanimously affirmed her conviction. *See State v. Horst*, 880 N.W.2d 24 (Minn. 2016). Horst then filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. ECF No. 1. In a report and recommendation ("R&R"), Magistrate Judge Steven E. Rau recommended denying Horst's petition. ECF No. 14.

This matter is before the Court on Horst's objection to the R&R. The Court has conducted a de novo review. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Based on that review, the Court overrules Horst's objection and adopts the R&R.

Before turning to Horst's objection,[1] the Court emphasizes the "high standard [that must] be met before a federal court may issue a writ of habeas corpus to set aside state-court rulings." *Uttecht v. Brown*, 551 U.S. 1, 10 (2007). This Court may grant habeas relief to Horst only if the Minnesota Supreme Court's adjudication of any of her federal claims:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[C]learly established Federal law" means "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). To act "contrary to" clearly established federal law, the state court must have either (1) arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or (2) decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *Id.* at 412-13. Under the "unreasonable application" clause, federal habeas relief is warranted if the state court identified the correct governing legal principle, but unreasonably applied

---

[1] The facts and procedural history of this case are summarized in Judge Rau's R&R, ECF No. 14, and in the Minnesota Supreme Court's opinion, 880 N.W.2d at 28-30.

that principle to the facts of the case. *Id.* at 413. It is not enough, under the "unreasonable application" clause, that the state court's decision was wrong, or even that it was "clear error"; the decision must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). Finally, on habeas review, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Horst objects to two aspects of the R&R:

Horst first disagrees with Judge Rau's determination that there was nothing objectively unreasonable about the Minnesota Supreme Court's decision that Horst was not in custody (and thus not entitled to a *Miranda* warning) when she was questioned at length by Sergeant Jake Peterson of the St. Paul Police Department. Horst argues that she was in custody during that interrogation and that, because she was not provided with a *Miranda* warning, the statements that she made to Sergeant Peterson should have been suppressed. Horst further argues that the contents of her cell phone should have been suppressed, as they were the fruit of this poisonous tree.

In support of her argument, Horst does not contend that the Minnesota Supreme Court's decision was contrary to clearly established federal law. In other words, Horst does not argue that the Minnesota Supreme Court decided a legal question that directly

conflicted with a Supreme Court decision regarding the same legal question, nor does she claim that the Minnesota Supreme Court's decision conflicts with a Supreme Court decision that addressed materially indistinguishable facts. Rather, Horst argues that the Minnesota Supreme Court's decision represented an unreasonable application of clearly established federal law.

In support of her argument, Horst emphasizes facts that the Minnesota Supreme Court did not explicitly discuss (or, in her view, afforded insufficient weight), and she ignores or downplays facts that the court did explicitly discuss (and, in her view, afforded excessive weight). If this Court were determining the issue as an original matter, the Court might well agree with Horst that she was in custody. The question for this Court is not, however, whether the decision of the Minnesota Supreme Court was correct as an original matter, but whether that decision was "objectively unreasonable." *Lockyer*, 538 U.S. at 76; *see also Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004) ("We cannot grant relief under AEDPA by conducting our own independent inquiry into whether the state court was correct as a *de novo* matter."). "A decision is not objectively unreasonable if 'fairminded jurists could disagree' as to its correctness." *Bahtuoh v. Smith*, 855 F.3d 868, 871 (8th Cir. 2017) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

The Court cannot find that the unanimous decision of the Minnesota Supreme Court that Horst was not in custody was a decision with which no "fairminded jurist" could agree. The court correctly identified the guiding legal principles, independently reviewed the evidence in the record (discovering at least one factual error made by the trial court[2]), identified several factors that militated toward a finding that Horst was not in custody,[3] acknowledged that "some of the [other] facts are suggestive of a custodial setting" (and identified some of those other facts[4]), and concluded—based on "the totality of the circumstances"—that "Horst was not in custody when she made the

---

[2]The Minnesota Supreme Court noted that "[t]he district court clearly erred when it found that Horst did not have an escort when she went to the restroom during the interview." *Horst*, 880 N.W.2d at 31 n.1.

[3]For example, Horst was not told that she had to accompany the police officers to the police station, Horst was interviewed by a single detective, Horst was interviewed in a non-secure conference room that could not be locked and that contained a telephone, Horst was permitted to keep her purse and its contents (including a cell phone), Horst twice left the conference room to use the restroom, the investigators never told Horst that she was a suspect, Horst did not make any "significantly incriminating statements," the investigators treated Horst as a "grieving widow" by giving her information about a chaplain and a nonprofit organization that could assist her, and "Horst left the police station without hindrance" when the interview concluded. *Horst*, 880 N.W.2d at 31-32.

[4]For example, Horst was interviewed at a police station, an officer accompanied Horst to the restroom, the questioning of Horst became more aggressive as the interview progressed and investigators became aware of conflicts between Horst's account and the account of her husband's stepsister, investigators were treating the death of Horst's husband as a homicide before Horst was questioned, and Sergeant Peterson recorded the interview (which was consistent with the requirement of Minnesota law that custodial interviews be recorded). *Horst*, 880 N.W.2d at 31-32.

statements that were the subject of her pretrial suppression motion." *Horst*, 880 N.W.2d at 31-33. It is possible that the Minnesota Supreme Court was incorrect, but its decision was not an "unreasonable application of[] clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d).

Horst's second complaint about the R&R relates to the State's use of her medical records. The evidence showed that Horst had told a number of friends that her husband had physically abused her and, as a result, caused multiple miscarriages. Indeed, the evidence showed that the man who killed Horst's husband at her request (Aaron Allen, the fiancé of the husband's stepsister) was motivated in part by Horst's complaint that her husband had punched her in the stomach and thereby caused yet another miscarriage. *See Horst*, 880 N.W.2d at 29.

The police obtained four search warrants and, pursuant to those warrants, collected Horst's medical records. *Id.* at 36. Those records disclosed that Horst had never suffered a miscarriage. Horst argued (in the trial court and then on appeal) that the collection of her records violated her rights under the Fourth Amendment, because the warrants "lacked particularity and a finite temporal scope." *Id.* at 35. Horst also argued (for the first time on appeal) that the actions of the law-enforcement officers shocked the conscience and thus deprived Horst of substantive due process. *Id.* at 37 n.4.

The Minnesota Supreme Court rejected Horst's substantive-due-process claim in a single sentence, citing *County of Sacramento v. Lewis*, 523 U.S. 833 (1998). *See Horst*, 880 N.W.2d at 37 n.4. *Lewis* involved a claim brought by the estate of Philip Lewis, a young man who had been killed after a police officer had engaged in a high-speed chase with the driver of the motorcycle on which Lewis was riding. The estate claimed that, by engaging in the high-speed chase, the police officer had deprived Lewis of substantive due process. The Court rejected that claim on the merits, but only after holding that the police officer's high-speed chase of the motorcycle did not involve a "search" or "seizure" that was "covered by" the Fourth Amendment. *Lewis*, 523 U.S. at 843 (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)). The Supreme Court made clear that, *had* the conduct of the police officer been covered by the Fourth Amendment, Lewis's estate could have brought only a Fourth Amendment claim, and not a claim under the Due Process Clause:

> Because we have "always been reluctant to expand the concept of substantive due process," we held in *Graham v. Connor*, 490 U.S. 386 (1989), that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."

*Lewis*, 523 U.S. at 842 (cleaned up). In short, the Minnesota Supreme Court's citation to *Lewis* indicates that the court had concluded that, because Horst was complaining of

-7-

conduct that was covered by the Fourth Amendment, her claim had to be analyzed under that amendment, and not under the Due Process Clause.[5]

---

[5]As noted, the Minnesota Supreme Court rejected Horst's substantive-due-process claim in a single sentence: "Because Horst's substantive-due-process argument is without merit, she is not entitled to relief on this claim." *Horst*, 880 N.W.2d at 37 n.4. That sentence was followed by a citation to *Lewis*.

Admittedly, this sentence does not, on its face, make clear whether the Minnesota Supreme Court cited *Lewis* in support of a decision to treat Horst's substantive-due-process claim as a Fourth Amendment claim or in support of a decision that Horst had not been deprived of substantive due process. Horst herself appears to understand the Minnesota Supreme Court to have held the former—she complains, in fact, about the failure of the court to address "the issue of due process and fundamental fairness" on the merits, ECF No. 17 at 8—and this Court agrees.

The facts addressed in *Lewis* bore no resemblance to the facts of this case, and *Lewis* itself emphasized that a decision about whether the actions of a government official are conscience shocking has to be based on careful scrutiny of the circumstances of the particular case:

> Rules of due process are not . . . subject to mechanical application in unfamiliar territory. Deliberate indifference that shocks in one environment may not be so patently egregious in another, and our concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking.

*Lewis*, 523 U.S. at 850.

In light of *Lewis*'s admonition that a court must conduct "an exact analysis of [the] circumstances" before rejecting a substantive-due-process on the merits, it is extraordinarily unlikely that the Minnesota Supreme Court cited *Lewis* in support of a one-sentence holding that the police officers who collected and used Horst's medical records had not shocked the conscience. Almost certainly, the Minnesota Supreme

(continued...)

The Minnesota Supreme Court went on to reject Horst's Fourth Amendment claim. The court explained that, "[i]n a criminal case, the remedy for an illegal search or seizure is generally limited to the suppression of illegally obtained evidence." *Horst*, 880 N.W.2d at 36. The court further noted that neither the medical records themselves nor the contents of those records had been introduced into evidence at trial. Thus, concluded the court, even if "the search warrants were overly broad in their scope . . . there would be nothing to suppress, as the information obtained by the search warrants was never admitted at trial." *Id.*

Horst complained that her medical records had been used in *other* ways that harmed her—in particular, when the State persuaded Allen to plead guilty and testify against her. Horst cited the fact that, at Allen's change-of-plea hearing, Allen said that he had learned that Horst had never suffered a miscarriage, and that learning that Horst had lied to him had influenced his decision to testify against her. The Minnesota Supreme Court rejected Horst's argument:

> The only conceivable "fruit" of the allegedly illegal search
> warrants relates to Allen's testimony, and specifically his
> decision to cooperate with the State . . . . It is not clear from

---

[5](...continued)
Court instead cited *Lewis* in support of a holding that, under *Graham v. Connor*, Horst's substantive-due-process claim had to be analyzed as a Fourth Amendment claim. That decision did not require "an exact analysis of [the] circumstances," as it was obvious that the government action that Horst was challenging was a search, and obvious that the legality of a search is covered by the Fourth Amendment.

> the record, however, how Allen learned of this fact. There is no evidence establishing that the State ever showed Horst's medical records to Allen. And significantly, Allen did not make such a statement at Horst's trial. Because Allen's testimony never touched on information from Horst's medical records, there was nothing to suppress from Allen's testimony.

*Id.*

In this habeas action, Horst does not argue that the Minnesota Supreme Court's decision was contrary to clearly established federal law—that is, she does not argue that the Minnesota Supreme Court decided a legal question that directly conflicted with a Supreme Court decision regarding the same legal question, nor does she claim that the Minnesota Supreme Court's decision conflicts with a Supreme Court decision that addressed materially indistinguishable facts. Instead, she contends that the Minnesota Supreme Court's decision represented an unreasonable application of clearly established federal law.

Judge Rau rejected Horst's claim. Judge Rau agreed with the Minnesota Supreme Court that, because Horst was complaining of an unconstitutional search, *Graham v. Connor* dictated that her claim be addressed solely under the Fourth Amendment. ECF No. 14 at 10-11. Judge Rau also held that, under *Stone v. Powell*, Horst's Fourth Amendment claim could not be reviewed by a federal court in a § 2254

action, because the state courts had "provided an opportunity for full and fair litigation" of that claim. 428 U.S. 465, 494 (1976). ECF No. 14 at 8-10.

Horst briefly objects to Judge Rau's conclusion that this Court cannot review her Fourth Amendment claim under *Stone v. Powell*. Horst points out that the rule of *Stone v. Powell* is not jurisdictional and argues that the rule is therefore "discretionary." ECF No. 17 at 8. That is a non sequitur. The fact that a law is not jurisdictional—that is, the fact that a law does not "involve[] a court's power to hear a case," *United States v. Cotton*, 535 U.S. 625, 630 (2002)—does not mean that the law is "discretionary." Most laws (including, say, the Fourth Amendment) are not "jurisdictional," and yet their application is not a matter of discretion. Neither the Supreme Court nor the Eighth Circuit has suggested that a district judge has the discretion to ignore the rule of *Stone v. Powell*.

Recognizing the problem that *Stone v. Powell* poses, Horst devotes most of her objection to arguing that her substantive-due-process claim should not be analyzed under the Fourth Amendment. Horst's argument is at times difficult to follow, but, at bottom, her complaint seems to be as follows: The behavior of the police in collecting all of her medical records shocked the conscience and thus deprived her of substantive due process. But the Minnesota Supreme Court treated her substantive-due-process claim as a Fourth Amendment claim under the rule of *Graham v. Connor*. It then said

-11-

that the remedy for a Fourth Amendment violation was limited to suppression of the illegally obtained evidence. It ignored the fact that, even though the State did not introduce her medical records or their contents into evidence, the State did use those records to harm her—in particular, by using the contents of the records to persuade Allen to testify against her. The Minnesota Supreme Court thus left her without a remedy for the deprivation of her right to substantive due process.

Horst's argument has a number of problems. As an initial matter, the Court notes that it is unlikely that, had the Minnesota Supreme Court addressed Horst's substantive-due-process claim on the merits (instead of analyzing it under the Fourth Amendment), the court would have found that the police acted in a manner that shocked the conscience. When it comes to the conduct of a law-enforcement officer, "only the most egregious official conduct" can be said to shock the conscience. *Lewis*, 523 U.S. at 846. Such a high standard is necessary "lest the Constitution be demoted to . . . a font of tort law." *Id.* at 847 n.8.

In this case, the police had reason to believe that Horst had induced Allen to kill her husband by claiming that her husband had caused her to miscarry. Evidence of whether Horst had lied to Allen was obviously relevant to the investigation. Clearly, then, the police had probable cause to believe that *some* of Horst's medical records contained highly probative evidence regarding the murder of her husband. And thus,

the police could undoubtedly have obtained *some* of Horst's medical records—either by subpoena or through a search warrant.

Horst's main complaint is that, because the warrants were insufficiently limited, the police were able to collect and use *all* of her medical records covering an eight-year period. It might well be that the warrants were deficient, as the Minnesota Supreme Court assumed (but did not decide). But there is no evidence that, in collecting Horst's medical records pursuant to the warrants, the police acted with deliberate indifference to Horst's rights. *See Neal v. St. Louis Cty. Bd. of Police Comm'rs*, 217 F.3d 955, 958 (8th Cir. 2000) ("In situations where a state actor is afforded a reasonable opportunity to deliberate various alternatives prior to electing a course of action, the chosen action will be deemed 'conscience shocking' if the action was taken with 'deliberate indifference.'"). Moreover, none of Horst's medical records or their contents were introduced into evidence against her. And even if Horst is correct that the police learned from her medical records that she had lied about miscarrying—and then used that information in persuading Allen to testify against her—the police would have been using information that they could have lawfully obtained through a subpoena or more narrowly drawn warrant. The conduct of the police does not seem to be so "[o]utrageous" that "it falls within the narrow band of the most intolerable government

conduct." *United States v. Boone*, 437 F.3d 829, 841 (8th Cir. 2006) (citation and internal quotations omitted).

Horst's argument also mischaracterizes the decision of the Minnesota Supreme Court. True, the court treated her substantive-due-process claim as a Fourth Amendment claim under the rule of *Graham v. Connor*. And true, the court noted that her medical records had not been introduced into evidence at Horst's trial. But the court did not stop there. The court also examined the record to determine if the medical records had been used in any other way against Horst. The court found that "[t]he only conceivable 'fruit' of the allegedly illegal search warrants relates to Allen's testimony, and specifically his decision to cooperate with the State." *Horst*, 880 N.W.2d at 36. But, after examining the record, the court concluded that Allen's testimony was not, in fact, a fruit of the allegedly unlawful search, as the record did not establish that Allen had learned about Horst's lie from the police. *Id.* Moreover, the court noted that Allen's trial testimony "never touched on information from Horst's medical records." *Id.*

In any event, the question for this Court is not whether the decision of the Minnesota Supreme Court to analyze Horst's constitutional claim solely under the Fourth Amendment was correct as an original matter, but whether that decision was "objectively unreasonable." *Lockyer*, 538 U.S. at 76. The Court cannot say that the court acted in a manner with which no "fairminded jurist" could agree. To the contrary, the

-14-

court's decision was clearly compelled by *Graham v. Connor*. Horst does not claim that a law-enforcement officer can *never* use a search warrant to obtain the medical records of a suspect, nor does Horst deny that the police could have lawfully gained access to at least *some* of the information in her medical records. Rather, Horst objects to the fact that, because the warrants did not sufficiently limit the discretion of investigators, those investigators were able to obtain more medical information than was constitutionally permissible.

Without question, then, Horst's "constitutional claim is covered by a specific constitutional provision, such as the Fourth . . . Amendment." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). Indeed, Horst's constitutional claim is *literally* covered by the text of the Fourth Amendment, which requires that a search warrant must "particularly describ[e] the place to be searched, and the persons or things to be seized." At bottom, Horst claims that the searches of her medical records were unconstitutional because the warrants that authorized those searches did not meet the Fourth Amendment requirement that "a warrant may not be issued unless . . . the scope of the authorized search is set out with particularity." *Kentucky v. King*, 563 U.S. 452, 459 (2011).[6] The rule of *Graham v. Connor* "requires that if a constitutional claim is covered

---

[6]Horst is far from the first defendant to make such a claim. *See, e.g.*, *United States v. Abrams*, 615 F.2d 541, 543 (1st Cir. 1980) (finding that a warrant authorizing the search of medical records "fails to meet the requirement of particularity" because "there is no
(continued...)

by a specific constitutional provision . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Lanier*, 520 U.S. at 272 n.7. That is precisely what the Minnesota Supreme Court did.

And that ends this Court's analysis. This Court has found that the decision of the Minnesota Supreme Court to analyze Horst's substantive-due-process claim as a Fourth Amendment claim was an objectively reasonable application of *Graham v. Connor*. For the reasons described by Judge Rau in his R&R, this Court is barred under *Stone v. Powell* from going further and examining the reasonableness of the Minnesota Supreme Court's disposition of Horst's Fourth Amendment claim. For these reasons, Horst's objection to the R&R is overruled, and her habeas action is dismissed.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, the Court OVERRULES petitioner's objection [ECF No. 17] and ADOPTS the R&R [ECF No. 14]. IT IS HEREBY ORDERED THAT:

1. Plaintiff's petition for a writ of habeas corpus under 28 U.S.C. § 2254 [ECF No. 1] is DENIED.

2. This action is DISMISSED WITH PREJUDICE.

---

[6](...continued)
limitation as to time and there is no description as to what specific records are to be seized").

3. No certificate of appealability will issue.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: January 24, 2019         s/Patrick J. Schiltz
                                Patrick J. Schiltz
                                United States District Judge